IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GARFF ENTERPRISES, INC., <br><br> Plaintiff, <br><br> v. <br><br> NETWATCH NORTH AMERICA, a California Corporation, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:24-cv-00603-RJS-DAO <br><br> District Judge Robert J. Shelby <br><br> Magistrate Judge Daphne A. Oberg |

Before the court is Defendant Netwatch North America's Motion for Summary Judgment.[1]  For the reasons discussed below, the Motion is GRANTED.

## BACKGROUND[2]

Defendant Netwatch North America is a California company that sells security monitoring products and services.[3]  Plaintiff Garff Enterprises is a Utah corporation that sells automobiles.[4]  On May 9, 2022, Garff entered a Services Agreement with Netwatch to provide security video monitoring services at Garff's luxury car dealership located in downtown Salt Lake City, Utah.[5]

Netwatch's security monitoring system operates in the following manner.  When Netwatch's video monitoring software detects motion within a customer's building, it triggers an

---

[1] Dkt. 26, *Netwatch North America's Motion for Summary Judgment* (*Motion*) at 1.

[2] In deciding Netwatch's Motion for Summary Judgment, the court views the facts in the light most favorable to Garff.  *See N. Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008) (holding that when applying the summary judgment standard, the court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party").

[3] Dkt. 1-1, *Complaint* ¶¶ 2, 6.

[4] *Id.* ¶¶ 1, 7.

[5] Dkt. 26-2, *Services Agreement*.

"alarm condition."[6]  The system then creates a GIF—a collection of three sequential still frame photos from the camera associated with the alarm—which is sent to an offsite Netwatch Monitoring Specialist.[7]  The Monitoring Specialist then reviews the GIF and determines a proper response.[8]  If the Monitoring Specialist observes the alarm condition was a false alarm or triggered by an authorized person, such as a night janitor, the Monitoring Specialist will "isolate" the alarm for a period of ten minutes.[9]  Isolating the alarm temporarily "turn[s] off the alarm[]" for the Monitoring Specialist.[10]  This allows the Monitoring Specialists to focus on detecting intrusions elsewhere and not be overwhelmed by false alarms.[11]  However, if the Monitoring Specialist detects a potential threat, they will review the live camera feed.[12]  Should the live feed show an intruder on the premises, the Monitoring Specialist performs a "voice down" where they order the unauthorized person—through installed speakers within the premises—to stop and informs the intruder they are notifying law enforcement.[13]  The Monitoring Specialist will then contact a list of individuals previously designated by the client on its "Protocol Form" and inform them of the intrusion.[14]  The Agreement provides Netwatch "will, without warranty, make reasonable efforts to follow the Protocol for your Premises."[15]

In addition to defining Netwatch's and Garff's obligations, the Agreement also includes disclaimer provisions limiting Netwatch's liability for actions arising out of the contract.  Among

---

[6] Dkt. 33, *Opposition Exhibit 2* (*Graham Deposition*), at 17:22–18:1.

[7] *Id*. at 18:2–20; 20:7–16.

[8] *Id*. at 19:24–20:3.

[9] *Id*. at 31:15–32:25, 39: 1–40:2.

[10] *Id*. at 39:20–40:9.

[11] *Id*.

[12] *Id*. at 18:24–19:4.

[13] *Id*. at 52:11–23.

[14] *Services Agreement* ¶ 13.

[15] *Id*.

these disclaimers, the Agreement provides that Netwatch does not "represent or warrant that the system [or] service . . . will detect or deter all burglaries . . . or that it will in all cases perform as intended."[16]  The Agreement explicitly states Netwatch does not "guarantee that [it] will always be able to decipher, understand, interpret, respond to, and manage the video or images received correctly under all circumstances."[17]  It additionally provides:

> If we or our agents or employees are found liable for loss, damage, injury, illness, or death of any kind whatsoever from our failure to perform any of our obligations under this Agreement . . . then our liability is limited to (1) $1,500, or (2) a sum equal to 12 times the monthly monitoring fee in effect at the time of the incident, whichever is less. This is not a penalty. This is your only remedy regardless of the legal theory used to find us liable.[18]

The Agreement further explains, "[i]f we were to have any liability greater than that agreed to by you . . . , we could not and would not provide the System or service, and we could not provide the System or service at the rates contained here."[19]

On July 23, 2023, an intruder entered Garff's downtown location by breaking a glass door.[20]  The Netwatch monitoring system triggered multiple alarms for the intrusion.[21] However, instead of responding to the intrusion by issuing a voice down and contacting the proper individuals pursuant to Garff's protocol, the Monitoring Specialist isolated the alarms for 10 minutes.[22]  The Monitoring Specialist later stated he had mistakenly determined the intruder was authorized custodial staff because the man "was not dressed as a normal intruder."[23]  Garff

---

[16] *Id.* ¶ 7.

[17] *Id.* ¶ 11.

[18] *Id.* ¶ 8.2.

[19] *Id.* ¶ 7.

[20] Dkt. 33, *Exhibit 4 Netwatch Incident Summary*.

[21] *Id.*; Dkt. 35, *Exhibit 1 Deposition of Ryan Brennan (Brennan Deposition)*, at 26:3-4.

[22] *Brennan Deposition* at 35:24–36:8.

[23] *Id.* at 34:3–13.

alleges the intruder stole a 2019 Ferrari 488 Pista owned by a Garff customer and damaged several other exotic luxury vehicles in the showroom.[24]  The intrusion caused damages in excess of $300,000.[25]

## PROCEDURAL HISTORY

On July 19, 2024, Garff filed the Complaint against Netwatch in Utah state court for damages arising out of the break-in.[26]  The Complaint asserts claims for breach of the Agreement, negligence, and gross negligence.[27]  Netwatch removed the action to this court on August 20, 2024.[28]  On January 30, 2026, Netwatch filed its Motion seeking Summary Judgment on all claims.[29]  The court heard oral argument on July 16, 2026.[30]  The Motion is fully briefed and ripe for review.[31]

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law."[32]  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[33]  A fact is material if, under the governing substantive law, it could "affect the outcome of the suit."[34]  "The movant

---

[24] *Complaint* ¶¶ 8, 10.

[25] *Id*. ¶ 14.

[26] *Complaint*.

[27] *Id*. ¶¶ 11–23.

[28] Dkt. 1, *Notice of Removal*.

[29] *Motion*.

[30] Dkt. 40, *Minute Entry*.

[31] *See Motion*; Dkt. 33, *Opposition to Defendant's Motion for Summary Judgment* (*Opposition*); Dkt. 35, *Netwatch North America's Reply in Support of Motion for Summary Judgment* (*Reply*).

[32] Fed. R. Civ. P. 56(a).

[33] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[34] *Id.*; *see also United States v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997) ("The substantive law of the case determines which facts are material.") (citation omitted).

4

bears the initial burden to show the absence of a genuine issue of material fact."[35]  The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party."[36]  At summary judgment, the court does not "weigh the evidence and determine the truth of the matter," but rather "determine[s] whether there is a genuine issue for trial."[37]

## ANALYSIS

Netwatch seeks summary judgment on Garff's three claims: breach of the Agreement, negligence, and gross negligence.[38]  The court considers each claim in turn.

### I.        Breach of Services Agreement

Netwatch first seeks summary judgment on Garff's claim for breach of the Agreement.[39] Garff alleges Netwatch breached the Agreement by failing to detect the intrusion and failing to trigger an alarm condition.[40]  Netwatch argues summary judgment is appropriate because the Agreement explicitly states Netwatch did not guarantee that it would always correctly interpret and respond to the video it receives, and that the Agreement allocates the risk of an improper intrusion response to Garff.[41]

Garff does not respond to Netwatch's breach of the Agreement arguments in its Opposition brief, which addresses only the negligence and gross negligence causes of action.[42]

---

[35] *Lazy S Ranch Props., LLC v. Valero Terminaling & Dist. Co.*, 92 F.4th 1189, 1198 (10th Cir. 2024).

[36] *N. Nat. Gas Co.*, 526 F.3d at 629.

[37] *Liberty Lobby*, 477 U.S. at 249.

[38] *See Complaint* ¶¶ 11–23.

[39] *Motion* at 10–14.

[40] *Id.* ¶ 13.

[41] *Motion* at 11–14.

[42] *See Opposition* at 19–25.

When a party fails to respond to an argument, it "tacitly concede[s]," and the court will not serve as an advocate "to survive the present Motion."[43]

Because Garff does not dispute the Agreement explicitly disavows any guarantee that Netwatch interpret and respond to an alarm condition correctly,[44] the court GRANTS summary judgment to Netwatch on the claim for breach of the Agreement.[45]

## II.    The Economic Loss Rule Bars Garff's Tort Claims.

Netwatch next argues summary judgment is appropriate on Garff's negligence and gross negligence claims.[46]  Garff alleges Netwatch breached its duty of care to provide intrusion detection services in a reasonable manner, failing to observe even slight care in monitoring the premises of Garff's downtown location the night of the intrusion.[47]  Netwatch argues Garff is precluded by Utah's economic loss rule from recovering damages here under theories of negligence.[48]  The court agrees.

Under Utah law, to prevail on a claim for negligence, Garff must establish Netwatch owed it a duty of care, which it then breached.[49]  A defendant commits gross negligence when it "fail[s] to observe even slight care, it is carelessness or recklessness to a degree that shows utter indifference to the consequences that may result."[50]  However, Utah's economic loss rule "prevents recovery of economic damages under a theory of tort liability when a contract covers

---

[43] *Storey v. Seipel*, No. 2:22-cv-00486-RJS-DAO, 2024 WL 436609, at *7 (D. Utah Oct. 24, 2024); *see also Shinn v. Ramirez*, 596 U.S. 366, 375 (2022) (finding a party conceded an issue in not responding).

[44] *Services Agreement* ¶ 11.

[45] *Complaint* ¶¶ 11–14.

[46] *Id.* ¶¶ 15–19.

[47] *Id.* at ¶ 16–17, 20–23.

[48] *Motion* 16–18.

[49] *Tesch for T.T. v. Bonneville Prop. Inv., LLC*, 2025 UT 58, ¶19, 582 P.3d 820.

[50] *Fleming v. Dullanty*, 2025 UT App 128, ¶ 32, 579 P.3d 365 (citing *Penunuri v. Sundance Partners, Ltd.*, 2017 UT 54, ¶ 35, 423 P.3d 1150).

6

the subject matter of the dispute."[51]  Under the rule, if a "tort claim and [a] contract claim

overlap[,]" that is, "when the conflict that arises between parties to a contract is regarding the

subject matter of the contract[,]" then the "contractual relationship controls, and parties are not

permitted to assert actions in tort."[52]  The purpose of the economic loss rule is to "prevent

disproportionate liability and allow parties to allocate risk by contract."[53]  The rule "marks the

fundamental boundary between contract law, which protects expectancy interests created through

agreement between the parties, and tort law, which protects individuals and their property from

physical harm by imposing a duty of reasonable care."[54]

An exception to the economic loss rule applies when a plaintiff alleges a breach of an

independent duty "separate and distinct from any contractual duty existing between the

parties."[55]  An independent duty is one that "does not overlap with those contemplated in a

contract."[56]  "Whether the economic loss rule applies depends on whether a duty exists

independent of any contractual obligations between the parties."[57]  Garff argues, in addition to

Netwatch's contractual duties, the company also owed an independent duty to protect Garff's

property under Restatement (Second) of Torts § 323.[58]  Utah adopts § 323, which recognizes a

---

[51] *Legal Tender Serv. PLLC v. Bank of Am. Fork*, 2022 UT App 26, ¶ 46, 506 P.3d 1211 (citing *Reighard v. Yates*, 2012 UT 45, ¶14, 285 P.3d 1168).

[52] *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶12, 435 P.3d 193 (citation modified).

[53] *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 36, 28 P.3d 669 (emphasis omitted).

[54] *Legal Tender*, 2022 UT App 26, ¶46 (citing *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶ 18, 221 P.3d 234).

[55] *Ward v. McGarry*, 2022 UT App 62, ¶ 22, 511 P.3d 1213 (citation modified).

[56] *Thorp v. Charlwood*, 2021 UT App 118, ¶ 22, 501 P.3d 1166 (citation modified) (citing *Reighard*, 2012 UT 45, ¶ 21); *see also Tidwell v. Jensen*, 2026 UT App 13, ¶ 35 n.6, 586 P.3d 517 (explaining that the Utah Supreme Court has found the economic loss rule applies when a tort claim is entirely duplicative of its contract claims).

[57] *Reighard*, 2012 UT 45, ¶ 21.

[58] *Opposition* at 24–25.

"duty to exercise reasonable care on the part of one who undertakes to render services."[59]   The

Restatement (Second) of Torts provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.[60]

To survive the limitations of the economic loss rule, a duty arising under § 323 must be "separate

and distinct" from the contractual duty created by the Agreement.[61]

The court concludes that any standard of care owed by Netwatch under § 323 is not

separate and distinct from the obligation it owed under the Agreement.  Here, the Agreement

created a contractual obligation for Netwatch to protect Garff's property through providing

CCTV monitoring services.[62]  In practice, this is the same duty § 323 imposes on Netwatch to

exercise reasonable care in performing CCTV monitoring to protect Garff's property.

Garff seeks to differentiate the duties by pointing to a provision of the Agreement that

details Netwatch's procedures upon receiving an alarm condition, [63] which states Netwatch will

"make reasonable efforts to follow the Protocol for [Garff's] Premises."[64]  Neither party has

---

[59] *DCR Inc. v. Peak Alarm Co.*, 663 P.2d 433, 436 (Utah 1983); Restatement (Second) of Torts § 323 (A.L.I 1965).

[60] Restatement (Second) of Torts § 323 (A.L.I. 1965).

[61] *Ward*, 2022 UT App 62, ¶ 22.

[62] *See* Dkt. 26-2, *Services Agreement* at 4 (providing in its Statement of Work, states that Netwatch would provide Garff a "CCTV System with monitoring").

[63] *Opposition* at 20–21.

[64] *Services Agreement* ¶ 11.

produced the Protocol for the downtown location.[65]  Garff argues in the absence of a Protocol,

this phrase creates a duty of reasonable care under Restatement § 323, which is governed by tort

law.[66]  Garff compares this duty to the duty in *DCR, Inc. v. Peak Alarm Co.*[67]  In *DCR*, an alarm

company failed to disclose to a purchaser that its alarm system was susceptible to a simple and

well-known deactivating technique which allowed burglars to render the system inoperative.[68]

Additionally, the alarm company knew both the risk and "an easy, inexpensive way to protect its

alarm systems against the risk of such deactivation."[69]  The Utah Supreme Court held the

negligence claim against the alarm company could proceed despite the contract's liability limit

(which only applied to contract-law claims) because the "defendant's duty to warn plaintiff of

the vulnerability of its alarm system [did] not originate from any promise contained within the

service contract itself[,]" but was rather an independent duty separate from its contracted

obligations.[70]

 But *DCR* is inapposite.  As a preliminary matter, *DCR* was decided 13 years before the

Utah Supreme Court adopted the economic loss rule in Utah.[71]  Though the Utah Supreme Court

has not explicitly overruled *DCR*, it is uncertain whether a tort claim under such circumstances

today would survive the economic loss rule.[72]  At oral argument, Garff maintained that a ruling

---

[65] *See generally Docket*.  Garff states Netwatch has been unable to produce the Protocol.  *See Opposition* at 21. However, the Agreement provides that Garff will "immediately give [Netwatch] and update as needed or requested a written Protocol."  *Agreement* ¶ 13.  It is unclear if Garff previously submitted a Protocol to Netwatch.

[66] *Opposition* at 20–21.

[67] 663 P.2d 433 (Utah 1983).

[68] *Id.* at 434.

[69] *Id*.

[70] *Id*. at 437.

[71] *See Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*,930 P.2d 1182, 1190 (Utah 1996).

[72] The Utah economic loss rule not only bars negligence claims absent an independent duty, but it also applies to intentional torts.  *See HealthBanc*, 2018 UT 61, ¶ 20.  If the economic loss rule includes intentional torts when related to a contract, the court finds it unlikely that the rule permits nonintentional torts—such as those claimed in *DCR*—when they are covered by a contract.

in favor of Netwatch finding a lack of a separate and distinct duty of care under § 323

necessitates overruling *DCR*.[73]  The court disagrees.  Assuming the continued validity of the

decision, the facts here are substantially different from those in *DCR* to make the latter

inapplicable regardless of whether it is still good law.  The negligence claim in *DCR* did not turn

on whether the alarm company properly installed and maintained the alarm system as contracted.

Rather, the claim arose from whether the defendants breached a seller's general duty to inform a

purchaser of known defects in its product.[74]  Such a duty did "not originate from any promise

contained within the service contract itself."[75]  By contrast, the "independent duty" Garff asserts

here is the performance of the service at the center of the contract.  The Agreement states

Netwatch will make reasonable efforts to follow the Protocol for Garff.[76]  Netwatch's obligation

to exercise reasonable care concerns its performance of the very service it was contracted to

provide: security video monitoring of Garff's downtown location.  Accordingly, Netwatch's duty

to exercise reasonable care in monitoring Garff's downtown location is inherently contractual,

not one "separate and distinct" from the contract.[77]  *DCR* is therefore inapplicable.

Recall that the purpose of the economic loss rule is to "prevent disproportionate liability

and *allow parties to allocate risk by contract*."[78]  The parties here did exactly that.  The

Agreement explicitly allocated the risk of a failure to prevent a burglary to Garff by stating

Netwatch does not "represent or warrant that the system [or] service . . . will detect or deter all

---

[73] As a preliminary matter, this court cannot overrule a decision of the Utah Supreme Court concerning a matter of Utah state law.

[74] *Id*. at 434–37.

[75] *DCR*, 663 P.2d at 437.

[76] *Agreement* ¶ 13.

[77] *Ward*, 2022 UT App 62, ¶ 22.

[78] *SME Indus.*, 2001 UT 54, ¶ 36 (emphasis in original).

burglaries . . . or that it will in all cases perform as intended."[79]  In fact, Netwatch acknowledged the importance of allocating risk in this manner by plainly stating that if it were to have any liability greater than specifically designated in the Agreement, Netwatch "could not and would not provide the System or service, and [it] could not provide the System or service at the rates contained [in the Agreement]."[80]  The parties reinforced this understanding in Section 8 of the Agreement, styled "Limitation of Liability," stating in part "[t]his Agreement is not an insurance policy or a substitute for an insurance policy, and the amounts you pay to us are not insurance premiums.  You must obtain all property, life, health, disability, business interruption, or other necessary insurance."[81]  Allowing the tort claims to proceed here despite the clear allocation of risk would undermine the fundamental purpose of the economic loss rule.[82]

Because Garff fails to establish that Netwatch owes a separate and distinct duty of care apart from those agreed upon in the contract, the contractual relationship controls.  The economic loss rule bars Garff's tort claims.  Therefore, the court grants Netwatch summary judgment on Garff's negligence and gross negligence claims.[83]

## CONCLUSION

For the foregoing reasons, Netwatch is entitled to summary judgment on all of Garff's claims, and its Motion is GRANTED.[84]  Netwatch's Motion to Exclude Plaintiff's Expert is DENIED as MOOT.[85]  The Clerk of Court is directed to close the case.

---

[79] *Services Agreement* ¶ 7.

[80] *Id.* ¶ 7.

[81] *Services Agreement* ¶ 8.1.

[82] If the court were to adopt Garff's interpretation of the economic loss rule, security monitoring companies would be effectively unable allocate the risk of burglary by contract, despite the intention of the economic loss rule.

[83] *Complaint* ¶¶ 15–19, 20–23.

[84] Dkt. 26.

[85] Dkt. 27, *Motion to Exclude Plaintiff's Expert, Mario Inestroza*.

SO ORDERED this 7th day of August, 2026.

BY THE COURT:

ROBERT J. SHELBY

United States District Judge